Joseph ZALESKI, t/a Zaleski Roofing Specialties, Appellant,

v.

CONGREGATION OF the SACRED HEARTS OF JESUS AND MARY, t/a Sacred Hearts Seminary, (a Massachusetts corp.), Appellee.

No. 4624.

District of Columbia Court of Appeals.

Argued June 17, 1969.

Decided Aug. 7, 1969.

---

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge.

Appellant brought suit alleging an unpaid $10,000 balance due and owing for the sale and installation of snow guards on the roof of a seminary building and for painting trim on a church building[1] both belonging to appellee. After a non-jury trial, the court below made a finding for the defendant, but specifically stated that the finding did not affect the amount admittedly owing for painting the church. Since the judgment entered on the finding did not provide for payment of the $680 and appellant requests relief at least to that extent, we remand with instructions to modify the judgment accordingly.

However, the gravamen of this appeal deals with the finding for appellee of non-liability for the snow guards. We affirm the judgment on that finding.

Appellant's basic contention relates to the trial court's finding that no contract, express or implied, was formed between the parties. To agree with appellant this court would have to conclude that the decision of the trial judge is clearly erroneous. See D.C.Code 1967, § 17–305(a), and Richardson v. J. C. Flood Co., D.C.App., 190 A.2d 259, 261 (1963). On this record such an appellate determination is unwarranted.

Appellant testified that after some hesitation Father Morgan[2] gave him the job of installing a few snow guards over the entranceways of the building at one dollar and sixty-five cents per guard and that later he was told to do the rest of the roof for the same unit price. One such snow guard was received in evidence. He denied that he offered to install snow guards on the building without costs as a sample of work in connection with advertising in the neighborhood.

William A. Grant, Washington, D. C., for appellant.

John B. Cullen, Washington, D. C., for appellee.

1. The appellee admitted owing $680, the amount sought for the painting.

2. It is uncontested that Father Morgan had authority to contract on behalf of appellee.

Father Morgan, on the other hand, testified that when appellant came to him looking for business he agreed to have some masonry and gutter repair work and some waterproofing done and that the cost of that work was paid. He testified that he also requested appellant to do some painting of windows and trim. Regarding snow guards he testified that he informed appellant he wasn't interested in having them installed but that he was told: "Well, we think you should have them, * * *. We'll give you a few of them over the doorway." No price was quoted. He did testify that he authorized installation of the guards above the doorways because:

They spoke of writing up things in different periodicals, such as the Catholic Directory, using our shrine as an ad, and it was this promotional thing that was in the back of my mind; that they were using our facilities as an ad for them.

He also testified that he gave appellant the names of "contacts" in the area. Father Morgan denied authorizing complete coverage of the roof and, indeed, told appellant's associate that he was not interested in any more snow guards, did not want them, and wished him to stop the work.

Thus, the conflict in testimony presented for decision the issue whether Father Morgan contracted for installation of snow guards or whether appellee became the unwilling "beneficiary" of a local advertising campaign calculated to turn the entire roof into a spike-studded testimonial against falling snow. While it is true that one who orders work done impliedly promises to pay for it,[3] we cannot say that the trial judge was bound to find on the testimony given that appellee ordered or acquiesced in the installation of the snow guards in question. Father Morgan's testimony provided a substantial basis[4] on which to base a verdict for appellee.

The other issues raised by appellant worthy of detailed discussion[5] relate to the testimony of one John Warfield, a roofing contractor who was tendered by appellee as an expert witness. Mr. Warfield had been in the roof construction business in this area for forty-two years. He was sure he had "put on" the roof in question.[6] He described it as a steep, slate roof.

His testimony regarding the snow guards in question[7] was quite pointed. He had used this snow guard on one job, and as to a building of the type in question, he "would have a heavier snow guard". In addition he testified that only two or three rows of guards a short distance from the eave would be customary in this area for this kind of roof.

Appellant now contends that Warfield's entire testimony was not admissible because the trial court failed to make a specific ruling as to his qualifications as an expert. Appellant, however, made no such request of the trial court and it must be remembered that the trial was without a jury. Under the circumstances we conclude that the trial judge was free to give such weight as he deemed appropriate to Mr. Warfield's testimony.

The trial judge concluded, after holding than no contract existed between the parties, that there was also no unjust enrichment. This was based on a finding

---

3. The Warner Corporation v. Magazine Realty Co., Inc., D.C.App., 255 A.2d 479 (decided July 17, 1969).

4. Dodge's Market, Inc. v. Turner, D.C. Mun.App., 67 A.2d 526, 528 (1949).

5. We cannot agree with appellant that denial of his motion for a new trial was an abuse of discretion. Desmond v. Robertson, D.C.App., 211 A.2d 775 (1965).

6. The witness viewed a photograph of the building taken by plaintiff and introduced as one of his exhibits.

7. Appellant testified that his snow guards were unique and that he had a patent on their design.

that "(1) the snow guards were not wanted, and (2) they were not necessary." Thus, the court reached the issue of quasi-contract.[8] "[I]n order for [appellant] to establish unjust enrichment the benefit must be shown to have been unjustly retained." Roebling v. Dillon, 109 U.S. App.D.C. 402, 403, 288 F.2d 386, 387 (1961). In this case, taking the evidence, as we must, in the light most favorable to appellee,[9] it is apparent that Father Morgan authorized installation of a few snow guards over the entranceways without charge as an aid to appellant's advertising in the area; that when the project expanded to include more of the roof he requested that no more guards be installed. Mr.

Warfield's testimony established a substantial basis for the finding that these particular snow guards, installed to completely cover the roof, were unnecessary. Accordingly, to the extent of any benefit to appellee from a few snow guards, the retention thereof cannot be said to be unjust as a matter of law, and as to the remainder of the guards, the trial judge might properly have concluded that no benefit in fact was realized.

Accordingly, the judgment appealed from is

Affirmed in part and remanded in part for modification consistent with this opinion.

---

8. The record fails to show that appellant proceeded at trial on this theory, but on appeal he urges that in the absence of a contract, the evidence compels a finding of unjust enrichment.

   " * * * In addition to true contracts there are other so-called quasi-contracts which arise independently of the intention of the parties and which are founded upon the doctrine of unjust enrichment. Under common-law pleading, actions on such quasi-contracts were brought in assumpsit for money had and received. This form of action was invented by the common-law judges to secure relief from the narrow restrictions of common-law procedure, which afforded no remedy in too many cases of merit. It is founded on the principle that no one ought unjustly to enrich himself at the expense of another, and the gist of the action is that the defendant has received money which in equity and good conscience should be paid to the plaintiff. * * *" Hillyard v. Smither & Mayton, D.C. Mun.App., 76 A.2d 166, 167 (1950) (footnote omitted).

9. Shu v. Basinger, D.C.Mun.App., 57 A. 2d 295 (1948).